**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

SIDRA RIGGINS, on behalf of herself and all others similarly situated,

<em>Plaintiff,</em>

    *v.*

PIONEER BANK,

<em>Defendant.</em>

1:23-cv-01534-DNH-DJS

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
PIONEER BANK'S MOTION TO DISMISS THE COMPLAINT
<u>PURSUANT TO FED. R. CIV. P. 12(b)(1) and (6)</u>**

DLA PIPER LLP (US)

Robert J. Alessi (NDNY Bar Roll No. 101019)
Steven M. Rosato (NDNY Bar Roll No. 703375)
1251 Avenue of the Americas
New York, NY 10020
Tel.: (212) 335-4500
robert.alessi@us.dlapiper.com
steven.rosato@us.dlapiper.com

Courtney Saleski (NDNY Bar Roll No. 703877)
Aaron J. Shaddy (*Admission pending*)
1650 Market Street - Suite 5000
Philadelphia, PA 19103
Tel.: (215) 656-3300
courtney.saleski@us.dlapiper.com
aaron.shaddy@us.dlapiper.com

*Counsel for Defendant Pioneer Bank*

Dated: March 4, 2024

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................1

SUMMARY OF ALLEGATIONS .................................................................................2

      A.     The Parties and the Contract Governing Plaintiff's Bank Account........................2

      B.     The Contract's Disclosure of Overdraft Fees. ........................................2

      C.     The Contract's Error Resolution Procedures. ........................................4

      D.     Plaintiff's Allegations and Claims. .......................................................5

APPLICABLE LEGAL STANDARDS ..........................................................................7

ARGUMENT ...............................................................................................................8

I.     PLAINTIFF FAILS TO STATE A CLAIM UNDER THE ELECTRONIC FUND
      TRANSFER ACT, HER SOLE FEDERAL CAUSE OF ACTION...................................8

      A.     Plaintiff's Claim is Barred by the Applicable One-Year
            Statute of Limitations..................................................................8

      B.     The EFTA's Notice Provisions Bar Plaintiff's Claim. ...........................9

      C.     Plaintiff Fails to Plausibly Plead a Violation of the EFTA in Any Event. ...........11

      D.     Regulation E Does Not Provide a Private Right of Action
            on the Facts Alleged..................................................................12

II.    PLAINTIFF'S REMAINING STATE-LAW CLAIMS SHOULD BE
      DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION. ...........................16

      A.     The Class Action Fairness Act Does Not Provide a Basis for Jurisdiction. ..........16

      B.     This Is Not a Proper Case for the Exercise of Supplemental Jurisdiction. ............18

III.   IN THE ALTERNATIVE, PLAINTIFF'S STATE-LAW CAUSES OF ACTION
      SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM..............................18

      A.     The Contract's Notice Provisions Bar Plaintiff's
            Breach of Contract Claims...........................................................18

      B.     The Complaint Does Not State a Claim for Breach of Contract
            in Any Event. ...........................................................................20

C.    Plaintiff's Unjust Enrichment Claim Is Barred Because a
Valid Contract Governs the Subject Matter......................................................23

D.    The Complaint Does Not State a Claim Under Section 349 of
the New York General Business Law...................................................................23

E.    Plaintiff Lacks Article III Standing to Seek Injunctive Relief
for Her Contract and Section 349 Claims. .........................................................25

CONCLUSION.......................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>Cases</u>

*Abrahams v. MTA Long Island Bus*,
    644 F.3d 110 (2d Cir. 2011) ................................................................... 15

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) ............................................................... 12, 14, 15, 16

*Ally Fin. Inc. v. Comfort Auto Grp. NY LLC*,
    2021 WL 4033249 (E.D.N.Y. Sept. 3, 2021) ......................................... 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................... *passim*

*Berni v. Barilla S.p.A.*,
    964 F.3d 141 (2d Cir. 2020) ................................................................... 25

*Blockbuster, Inc. v. Galeno*,
    472 F.3d 53 (2d Cir. 2006) ..................................................................... 17

*Calcano v. Swarovski N. Am. Ltd.*,
    36 F.4th 68 (2d Cir. 2022) ..................................................................... 24

*Camacho v. JPMorgan Chase Bank*,
    2015 WL 5262022 (N.D. Cal. Sept. 9, 2015) ........................................ 10

*Carnegie-Mellon Univ. v. Cohill*,
    484 U.S. 343 (1988) ............................................................................... 18

*Carter v. HealthPort Techs., LLC*,
    822 F.3d 47 (2d Cir. 2016) ....................................................................... 7

*Catalano v. Marine Midland Bank*,
    303 A.D.2d 617 (2d Dep't 2003) ........................................................... 20

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994) ............................................................................... 14

*Costoso v. Bank of Am., N.A.*,
    74 F. Supp. 3d 558 (E.D.N.Y. 2015) ..................................................... 24

*Crockrom v. Bank of Am., N.A.*,
   2021 WL 5751461 (2d Cir. Dec. 3, 2021) ..............................................................19

*DeFlora Lake Dev. Assocs., Inc. v. Park*,
   654 F. App'x 9 (2d Cir. 2016) ...............................................................................20

*Domann v. Summit Credit Union*,
   2018 WL 4374076 (W.D. Wis. Sept. 13, 2018) .....................................................8, 9

*Dorsey v. U.S. Bank Nat'l Ass'n*,
   2012 WL 13001917 (M.D. La. Apr. 2, 2012) ..........................................................10

*Ellul v. Congregation of Christian Bros.*,
   774 F.3d 791 (2d Cir. 2014) ......................................................................................9

*Fish v. Tom's of Maine, Inc.*,
   2023 WL 8530341 (N.D.N.Y. Dec. 8, 2023) .............................................................8

*Forjone v. Dep't of Motor Vehicles*,
   414 F. Supp. 3d 292 (N.D.N.Y. 2019) ......................................................................7

*Gale v. Hyde Park Bank*,
   2007 WL 541946 (N.D. Ill. Feb. 14, 2007) .............................................................10

*GFI Genfare v. Reg'l Transp. Auth.*,
   932 F. Supp. 1049 (N.D. Ill. 1996) ..........................................................................14

*Gold v. New York Life Ins. Co.*,
   730 F.3d 137 (2d Cir. 2013) ....................................................................................17

*Hallstrom v. Tillamook Cnty.*,
   493 U.S. 20 (1989) ...................................................................................................10

*Hinton v. Atlantic Union Bank*,
   2020 WL 9348205 (E.D. Va. Nov. 2, 2020) ............................................................15

*Int'l House v. Consol. Edison Co. of New York, Inc.*,
   2023 WL 2898623 (S.D.N.Y. Apr. 11, 2023) ..........................................................18

*Joseph v. Bank of Am.*,
   2021 WL 7708415 (N.D. Ga. Dec. 3, 2021) ............................................................11

*Lewis v. Hertz Corp.*,
   181 A.D.2d 493 (1st Dep't 1992) .............................................................................24

*Lucker v. Bayside Cemetery*,
   114 A.D.3d 162 (1st Dep't 2013) .............................................................................24

*Ludl Elecs. Prods., Ltd. v. Wells Fargo Fin. Leasing, Inc.*,
  6 A.D.3d 397 (2d Dep't 2004) ...........................................................................24

*Lussoro v. Ocean Financial Credit Union*,
  456 F. Supp. 3d 474 (E.D.N.Y. 2020) ...............................................................15

*McClellon v. Cap. One, N.A.*,
  2018 WL 3569859 (W.D. Wash. July 25, 2018) ................................................12

*N.Y. State Teamsters Council Health & Hosp. Fund v. Centrus Pharm. Sols.*,
  235 F. Supp. 2d 123 (N.D.N.Y. 2002) ...............................................................18

*In re Navidea Biopharm. Litig.*,
  2019 WL 7187111 (S.D.N.Y. Dec. 26, 2019) ....................................................23

*Nicholas v. Trump*,
  433 F. Supp. 3d 581 (S.D.N.Y. 2020) ..................................................................7

*Oparaji v. Municipal Credit Union*,
  2022 WL 1122681 (2d Cir. Apr. 15, 2022) ........................................................12

*Overby v. Chase Manhattan Bank & J.P. Morgan Chase*,
  351 F. Supp. 2d 219 (S.D.N.Y. 2005) ................................................................10

*Platsky v. Lazar*,
  2015 WL 9694518 (S.D.N.Y. Nov. 30, 2015) ....................................................14

*Prignoli v. Bruczynski*,
  2021 WL 4443895 (E.D.N.Y. Sept. 28, 2021) ...................................................12

*Qassemzadeh v. IBM Poughkeepsie Emps. Fed. Credit Union*,
  167 A.D.2d 378 (2d Dep't 1990) ........................................................................20

*Rader v. Sandia Lab'y Fed. Credit Union*,
  2021 WL 1533664 (D.N.M. Apr. 19, 2021) .........................................................8

*Radon Const. Corp. v. Colwell*,
  248 A.D.2d 366 (2d Dep't 1998) ........................................................................20

*Reid v. Toyota Motor Credit Corp.*,
  2013 WL 1397143 (S.D.N.Y. Apr. 8, 2013).......................................................11

*Rider v. Uphold HQ Inc.*,
  657 F. Supp. 3d 491 (S.D.N.Y. 2023).................................................................24

*Sands v. Ticketmaster-N.Y., Inc.*,
  207 A.D.2d 687 (1st Dep't 1994) .......................................................................24

*Spagnola v. Chubb Corp.*,
   574 F.3d 64 (2d Cir. 2009)................................................................23

*Speckman v. Fabrizio*,
   547 F. Supp. 3d 239 (N.D.N.Y. 2021) ...........................................16, 18

*Suero v. NFL*,
   2022 WL 17985657 (S.D.N.Y. Dec. 16, 2022) .................................17

*Tilley v. Mountain Am. Fed. Credit Union*,
   2018 WL 4600655 (D. Utah Sept. 25, 2018) .....................................8

*Toth v. Scott Credit Union*,
   2021 WL 535549 (S.D. Ill. Feb. 12, 2021) ......................................8, 9

*Town of Chester, N.Y. v. Laroe Estates, Inc.*,
   581 U.S. 433 (2017)........................................................................25

*United States v. Sineneng-Smith*,
   140 S. Ct. 1575 (2020).....................................................................15

*Vaccariello v. XM Satellite Radio, Inc.*,
   295 F.R.D. 62 (S.D.N.Y. 2013) .......................................................25

*Wallert v. Atlan*,
   141 F. Supp. 3d 258 (S.D.N.Y. Oct. 26, 2015)..............................20, 21

## Statutes

15 U.S.C. § 1693.......................................................................13, 14

15 U.S.C. § 1693b...........................................................................14

15 U.S.C. § 1693c...........................................................................14

15 U.S.C. § 1693f.....................................................................4, 9, 10

15 U.S.C. § 1693g.............................................................................9

15 U.S.C. § 1693m.......................................................................8, 12

15 U.S.C. § 1693o-2.......................................................................14

28 U.S.C. § 1331..........................................................................6, 16

28 U.S.C. § 1332........................................................................16, 17

28 U.S.C. § 1367..................................................................6, 8, 16, 18

New York General Business Law § 349 ................................................................ *passim*

## **Regulations**

12 C.F.R. § 1005.17 ........................................................................................ *passim*

12 C.F.R. § Pt. 1005, App. A ................................................................................14

## **Rules**

Fed. R. Civ. P. 8 ....................................................................................................11

Fed. R. Civ. P. 12(b)(1) ................................................................................1, 7, 16

Fed. R. Civ. P. 12(b)(6) ........................................................................................1, 7

Defendant Pioneer Bank ("Pioneer") respectfully submits this memorandum of law in support of its motion to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff's complaint should be dismissed in its entirety.  Plaintiff's allegation that Pioneer somehow breached her contract or somehow deceived her when she incurred overdraft fees on her checking account rests on the false assumption that there is something inherently deceptive about overdraft fees.  This is baseless.  The very regulations plaintiff cites in her complaint recognize that a financial institution may assess fees when a consumer has insufficient or unavailable funds in the account, *see* 12 C.F.R. § 1005.17, and her contract with Pioneer is unequivocal: she agreed that Pioneer "may charge fees for overdrafts."  Dkt. No. 1-2, Compl. Ex. 1 at 1-2.  The only question, then, is whether plaintiff has pleaded that *her* overdraft fees breached her contract somehow or were deceptive in some way.  She has not, and she cannot do so.

Plaintiff's insufficient, vague, and boilerplate complaint should be dismissed for myriad reasons.  First, plaintiff fails to plead that she can proceed with her sole federal cause of action under the Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq.* ("EFTA"), because she has filed outside the applicable one-year statute of limitations, fails to plead that she reported her allegedly erroneous overdraft fees to Pioneer Bank within the 60-day period required under the EFTA, fails to plead facts that could support this cause of action, and relies on a regulation that does not supply a private right of action on the facts alleged here.  And because she lacks a federal cause of action, this Court lacks jurisdiction, as plaintiff fails to plead facts that could allow this Court to exercise jurisdiction under the Class Action Fairness Act ("CAFA"), her only asserted alternative basis for jurisdiction.

Even if plaintiff could clear these hurdles, her state-law claims are fatally defective. Her contract claims are barred because she failed to provide the 60-day notice required by the plain terms of her contract, but even if she had, she fails to specify any contractual provision that allegedly was breached. Instead, she complains of conduct that she authorized under the contract's plain terms. Plaintiff's unjust enrichment claim similarly fails because she does not challenge the validity of her contract. And her claim under New York General Business Law § 349 fails due to the same deficiencies and the plain disclosures in her contract.

For these reasons and more, the complaint should be dismissed in its entirety.

## SUMMARY OF ALLEGATIONS

### A.    The Parties and the Contract Governing Plaintiff's Bank Account.

Pioneer is a bank headquartered in Albany, New York. Dkt. No. 1, Compl. ¶ 9. Plaintiff Sidra Riggins is a citizen and resident of Schenectady, New York who maintained a checking account with Pioneer during an unspecified time period. *Id.* ¶ 8.

Plaintiff alleges that she was in a contractual relationship with Pioneer through the Terms and Conditions of her account (the "Contract"), attached to her complaint as Exhibit 1. Compl. ¶ 41 & Ex. 1. Plaintiff does not challenge the validity of the Contract and does not plead that she continues to bank with Pioneer.

### B.    The Contract's Disclosure of Overdraft Fees.

The Contract states that it "is a contract that establishes rules which control your account(s) with us" and asks plaintiff to "read this carefully and retain it for future reference." Ex. 1 at 1. It further explains that "[i]f you sign the signature card or continue to use the account, you agree to these rules." *Id.* The Contract explicitly and repeatedly addresses overdraft fees. Use of plaintiff's account is conditioned on agreeing to "the terms of this account and the schedule of charges." *Id.* at 1. The Retail Service Charge Schedule lists charges associated with the account, including $30

2

charges for items paid utilizing Pioneer's overdraft service, items presented against insufficient funds, items presented against uncollected funds, and items presented but subsequently returned. *Id.* at 14.  By choosing to bank with Pioneer, plaintiff authorized Pioneer to "deduct these charges, without notice to you, directly from the account balance as accrued." *Id.* at 1.

The section of the Contract beginning with "<u>Overdrafts</u>" explains that plaintiff "understand[s] that [Pioneer] may, at [its] discretion, honor withdrawal requests that overdraw your account." *Id.*  Plaintiff "agree[d] that [Pioneer] may charge fees for overdrafts, except fees for overdrafts caused by ATM withdrawals or one-time debt card transactions if you have not opted-in to that service." *Id.* at 1-2.  Plaintiff also agreed to a substantively identical process in the section of the Contract entitled "Electronic Funds Transfer Disclosure - Regulation E Compliance":

> **YOUR AGREEMENT**: By using any of the electronic services described in this document, you are agreeing to comply with the following: You agree to keep sufficient collected funds in your account(s) to cover any electronic fund transfers. If you do not have sufficient funds in your account, there may be a charge for each transaction whether or not the transfer is processed. **You agree to be responsible for all charges incurred by the use of your card, code or other access device, including any overdrafts**. . . .

*Id.* at 9 (emphasis added).

The Contract also describes circumstances in which an overdraft fee may be incurred, explaining that "[a] non-sufficient funds (negative) balance" may result from:

A) The payment of checks, electronic funds transfers, or other withdrawal requests;
B) Payments authorized by you;
C) The return, unpaid, of items deposited by you;
D) The imposition of applicable service charges; or
E) The deposit of items which according to the Bank's Funds Availability Policy, are treated as not yet "available" or finally paid.

*Id.* at 7.

Plaintiff understood fundamental information relating to her account. The Contract provided that, if at any time plaintiff did not wish to use Pioneer's overdraft service, plaintiff could call the bank or visit one of Pioneer Bank's branch locations. *Id.* at 7. Plaintiff understood that her "statement balance may not reflect your available balance due to the settlement of pending transactions." *Id.* The Contract also provides that "[t]ransaction authorization for [point of sale] and ATM transactions is based on available balance including ODP limit at the time of authorization for POS and ATM transactions if you have affirmatively opted in for Regulation E purposes." *Id.* And it cautions that "[i]t is imperative that you keep an accurate and current record of all transactions which are pending or have settled against your account." *Id.*

### C.    The Contract's Error Resolution Procedures.

The Contract contains explicit provisions governing the identification and correction of errors associated with plaintiff's account, which reflect substantively identical notice requirements under the EFTA's provisions for error resolution. *See* 15 U.S.C. § 1693f. As a condition of opening an account with Pioneer, plaintiff agreed to monitor her account with "reasonable care and promptness" and to report any irregularities to Pioneer, such as unauthorized signatures, alterations, or forgeries. Ex. 1 at 2. Plaintiff also "agree[d] to examine [her] statement with reasonable promptness for any other error" and would report errors relating to her account within 60 days of receiving her statement. *Id.* at 3. And she was warned that a "[f]ailure to examine your statement and report any such errors to us within 60 days of when we first send or make the statement available precludes you from asserting a claim against us for any such errors on items identified in that statement, and as between you and us the loss will be entirely yours." *Id.*

The same process applied to electronic transfers that plaintiff believed were problematic or incurred in error. Plaintiff agreed to bring any such problems or errors to the attention of Pioneer no later than 60 days after she received the relevant bank statement:

**ERROR RESOLUTION**: IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR EFTS: Contact us as soon as you can if you think your statement or receipt is wrong or if you need more information about an EFT listed on the statement or receipt.  **We must hear from you no later than sixty (60) days after we sent the FIRST statement on which the problem or error appeared.**

Ex. 1 at 11 (emphasis added).  As part of the error resolution process, plaintiff agreed to notify Pioneer orally or in writing about the "problem or error" on her account statement, including by providing: (1) her name and account number; (2) a description of "the error or the EFT you are not sure about" and an explanation as to "why you believe it is an error or why you need more information"; and (3) "the dollar amount of the suspected error."  *Id.*  Pioneer would then conduct an investigation into the reported problem or error within 10 business days (or 45 days if more time were necessary) and would "correct any error promptly."  *Id.*

### D.      Plaintiff's Allegations and Claims.

The Complaint centers on five overdraft fees plaintiff allegedly incurred between December 2020 and August 2022.  The first fee, dating December 10, 2020, purportedly relates to an overdraft fee incurred despite plaintiff then having a positive account balance of $7.86.  Compl. ¶ 102.  Plaintiff provides no other information about this transaction, including how it was incurred, whether it was incurred in connection with an electronic transfer, or whether she actually ended up paying this overdraft fee.

Two other fees, incurred on January 19, 2021 and March 18, 2021 (Compl. ¶¶ 77, 78), are characterized as "authorize positive, settle negative" debit card transactions, by which plaintiff means that she had made a purchase with the understanding that her *statement* balance was adequate to cover the transaction but that her *available* balance was not, owing to other pending or settling transactions.  *Id.* ¶¶ 21-24.

Plaintiff also alleges that she was charged an overdraft fee twice for a single, unidentified purchase in August 2022.  *Id.* ¶¶ 94-101.  On or around August 23, 2022, plaintiff allegedly

attempted to make a purchase for $40.16, but the transaction was returned and plaintiff incurred a $30 fee.  *Id.*  According to plaintiff, "[u]nbeknownst to Plaintiff and without Plaintiff's request," Pioneer then reprocessed the transaction and charged a second $30 fee.  *Id.*  Plaintiff does not challenge the propriety of the first fee, nor does she plead that she reported the second fee as an error to Pioneer.

One year, three months, and six days after plaintiff's last incurred overdraft fee on August 30, 2022 (Compl. ¶ 97), plaintiff filed this lawsuit.  She attempts to bring six causes of action: (1) a breach of contract claim premised on her allegedly "authorize positive, settle negative" overdraft fees from January 19 and March 18, 2021; (2) a breach of contract claim premised on the second of two overdraft fees she incurred for a $40.16 purchase in August 2022; (3) a breach of contract claim premised on the overdraft fee she allegedly incurred on her account balance of $7.86 on December 10, 2020; (4) a claim of unjust enrichment, but "only if the parties' contract is deemed unconscionable or otherwise unenforceable"; (5) a claim for deceptive practices under New York's General Business Law § 349, premised on the same facts underlying her contract claims; and (6) a single federal claim purporting to be for violation of the EFTA premised on violation of Regulation E, 12 C.F.R. § 1005.17, a regulation promulgated by the Consumer Financial Protection Bureau ("CFPB") pursuant to that statute.

Plaintiff asserts claims on behalf of herself and on behalf of three putative classes defined as "[a]ll citizens of New York" who fall within the factual parameters of her three contract claims during the applicable statute of limitations.  Compl. ¶ 119.  Plaintiff attempts to invoke the jurisdiction of this Court on two grounds.  She first invokes federal-question jurisdiction under 28 U.S.C. § 1331, as this action purportedly "arises under . . . 12 C.F.R. § 1005.17," with supplemental jurisdiction supposedly exercisable over her state-law claims through 28 U.S.C. § 1367.

Compl. ¶¶ 10-11.  Plaintiff also attempts to invoke the Court's diversity jurisdiction under the provisions of CAFA, notwithstanding that her complaint does not plead diversity as between Pioneer and any member of the putative classes, which as pleaded are explicitly limited to New York citizens.  *Id.* ¶¶ 8, 12, 119.

## APPLICABLE LEGAL STANDARDS

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d 292, 297-98 (N.D.N.Y. 2019) (cleaned up).  Such a motion "may be either facial or fact-based."  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).  A facial motion "is one based solely on the allegations for the complaint . . . and exhibits attached to it[,]" whereas a fact-based motion may include "evidence beyond the complaint and its exhibits."  *Nicholas v. Trump*, 433 F. Supp. 3d 581, 586 (S.D.N.Y. 2020) (internal quotations omitted).

A motion to dismiss under Rule 12(b)(6) should be granted when a complaint fails to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Though the Court must accept well-pleaded factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a viable claim.  *Id*.  A complaint must contain more than "'naked assertions' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Such allegations are "not entitled

to the assumption of truth" otherwise applied on a motion to dismiss.  *Iqbal*, 556 U.S. at 679; *see also Fish v. Tom's of Maine, Inc.*, 2023 WL 8530341, at *1 (N.D.N.Y. Dec. 8, 2023) (Hurd., J.).

The analysis here proceeds in three steps.  First, plaintiff's sole federal cause of action under the EFTA must be dismissed for failure to state a claim on several grounds.  Second, the complaint does not plead a valid basis to invoke this Court's diversity jurisdiction under CAFA, and this is not a proper case in which to exercise supplemental jurisdiction over plaintiff's remaining state-law claims under 28 U.S.C. § 1367.  Plaintiff's state-law claims therefore should be dismissed for lack of subject matter jurisdiction.  Third, even if the state-law claims were not subject to dismissal on jurisdictional grounds, they should be dismissed for failure to state a claim and for failure to plead Article III standing for plaintiff's requested injunctive relief.

## ARGUMENT

## I.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE ELECTRONIC FUND TRANSFER ACT, HER SOLE FEDERAL CAUSE OF ACTION.

### A.    Plaintiff's Claim is Barred by the Applicable One-Year Statute of Limitations.

Plaintiff's EFTA claim is based on alleged overdraft fees that she claims were improperly assessed under Regulation E's "opt-in rule."  *See* Compl. ¶¶ 103-09, 190-98; 12 C.F.R. § 1005.17. Any claim based on an alleged violation of the EFTA must be brought "within one year from the date of the occurrence of the violation."  15 U.S.C. § 1693m(g).  This one-year limitations period applies equally to a claim, like the one plaintiff attempts to assert here, alleging that the plaintiff was assessed overdraft fees in violation of the opt-in rule.  *See, e.g.*, *Toth v. Scott Credit Union*, 2021 WL 535549, at *8-9 (S.D. Ill. Feb. 12, 2021); *Rader v. Sandia Lab'y Fed. Credit Union*, 2021 WL 1533664, at *11 (D.N.M. Apr. 19, 2021); *Tilley v. Mountain Am. Fed. Credit Union*, 2018 WL 4600655, at *2-4 (D. Utah Sept. 25, 2018); *Domann v. Summit Credit Union*, 2018 WL 4374076, at *1, *9 (W.D. Wis. Sept. 13, 2018).  The date on which the allegedly improper

overdraft was assessed is the date of the violation for purposes of the statute of limitations. *See, e.g.*, *Toth*, 2021 WL 535549, at *8; *Domann*, 2018 WL 4374076, at *9 ("[T]he limitation period is triggered when a financial institution makes a first unauthorized transfer or charges and overdraft fee[.]") (collecting cases)).

Here, all of the allegedly improper overdraft fees were assessed more than a year prior to plaintiff's filing of her complaint on December 6, 2023, with the most recent overdraft fees allegedly assessed on August 23 and 30, 2022. Compl. ¶¶ 95, 97; *see also id.* ¶¶ 77, 78, 101. "[O]n the face of the complaint," therefore, plaintiff's EFTA claim is time barred and must be dismissed. *E.g.*, *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014).

**B.      The EFTA's Notice Provisions Bar Plaintiff's Claim.**

The EFTA sets forth the governing procedure for the resolution of errors associated with electronic fund transfers by requiring banks, within 60 days of receiving notice from a customer, to investigate whether "an error has occurred" with respect to "the consumer's [bank] account." 15 U.S.C. § 1693f(a). If the bank "determines that an error did occur, it shall promptly correct the error, subject to section 1693g of this title," by providing a reimbursement or other remedy. *Id.* § 1693f(b). If no error is found, then the bank must provide its findings to the consumer in accordance with the statute. *Id.* § 1693f(d). Section 1693g, in turn, provides that "reimbursement need not be made to the consumer for losses the financial institution establishes would not have occurred but for the failure of the consumer to report within sixty days of transmittal of the statement . . . any unauthorized electronic fund transfer or account error which appears on the period statement provided to the consumer under section 1693d of this title." 15 U.S.C. § 1693g(a).

These procedures are not optional—they must be followed before a consumer can run to court, consistent with Congress's considered and specified judgment. The EFTA is one of many

9

statutes containing similar notice requirements that "strike a balance between encouraging citizen enforcement of [] regulations and avoiding burdening the federal courts with excessive numbers of citizen suits." *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 29 (1989).  Providing such notice "gives the alleged violator an opportunity to bring itself into complete compliance . . . and thus likewise render unnecessary a citizen suit." *Id.*  Courts across the country applying the EFTA have accordingly found that bank customers have "a duty to notify [their bank] of any errors or unauthorized transactions within 60 days after receiving documentation of the electronic transfer" or else they are "barred from asserting any of [their] banking claims." *Overby v. Chase Manhattan Bank & J.P. Morgan Chase*, 351 F. Supp. 2d 219, 225 (S.D.N.Y. 2005).[1]

Plaintiff does not even attempt to plead that she provided the notice required under the EFTA for the overdraft fees at issue here.  Rather, she offers a bare legal conclusion that she "had no duty to report the fees as errors" because "they were part of the systemic and intentional assessment of fees according to Defendant's standard practices."  Compl. ¶ 111.  This makes no sense:  The complaint asserts repeatedly that these fees were charged without authorization.  *See, e.g.*, Compl. ¶¶ 93, 134, 145.  Plaintiff's attempted semantical dodge is just another way of saying that the fees were charged in "error."  But even if there were some difference between an "unauthorized fee" and one charged "in error," plaintiff has not identified what that difference is, and her "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" are not entitled to any pleading deference.  *Iqbal*, 556 U.S. at 678.  Plaintiff has not pleaded any factual basis on which

---

[1] *See also, e.g.*, *Camacho v. JPMorgan Chase Bank*, 2015 WL 5262022, at *4 (N.D. Cal. Sept. 9, 2015) (granting motion to dismiss EFTA claim as plaintiff's notice "was ineffective because the 60-day period under § 1693f had already concluded); *Dorsey v. U.S. Bank Nat'l Ass'n*, 2012 WL 13001917, at *3 (M.D. La. Apr. 2, 2012) (granting motion to dismiss because "[t]he complaint lacks sufficient detail to show that Plaintiff satisfied his timely notification duty"); *Gale v. Hyde Park Bank*, 2007 WL 541946, at *2 (N.D. Ill. Feb. 14, 2007) (granting summary judgment for failure to provide notice and holding that "[a] bank customer must notify his or her bank that an account error exists within sixty days of receiving a bank statement or other notification.").

to conclude that she is somehow exempted from the EFTA's notice requirements.  Her failure to comply with those requirements compels dismissal of her claim.

### C.  Plaintiff Fails to Plausibly Plead a Violation of the EFTA in Any Event.

Plaintiff provides virtually no facts to support her conclusory allegations that Pioneer failed to comply with the EFTA.  For starters, she does not even plead that all of the specified transactions are cognizable under the EFTA.  "The EFTA governs any transfer of funds '*other than a transaction originated by check*, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape.'"  *Reid v. Toyota Motor Credit Corp.*, 2013 WL 1397143, at *8 (S.D.N.Y. Apr. 8, 2013) (quoting 15 U.S.C. § 1693a(7)) (emphasis in original).  Plaintiff only identifies two of her overdraft fees as relating to electronic fund transfers, specifically the debit card transactions on January 19 and March 18, 2021.  Compl. ¶¶ 77, 78.  Plaintiff provides no detail about the nature of the other transactions identified in the complaint, including whether they were effectuated by check or other non-electronic means.  As a result, plaintiff "does not state a claim under the EFTA."  *Reid*, 2013 WL 1397143, at *8; *see also Joseph v. Bank of Am.*, 2021 WL 7708415, at *3 (N.D. Ga. Dec. 3, 2021) (same).

Plaintiff's allegations as to Pioneer's conduct also are insufficient under Rule 8.  Plaintiff alleges in conclusory fashion that Pioneer "provided inaccurate and untruthful information" about "its overdraft practices" and elsewhere asserts that Pioneer "fail[ed] to provide its customers with a valid description of the overdraft program which the meets the strictures of 12 C.F.R. § 1005.17."  *See* Compl. ¶¶ 5, 195.  Plaintiff also asserts that she "relied on Defendant's misrepresentations in its OD Opt-In Form" and that she "chose to opt-in to overdraft protection based in part on Defendant's misrepresentations."  *Id.* ¶ 196.  But aside from these broad, vague statements, Plaintiff does not actually identify what was misrepresented to her.  She does not identify what misrepresentations were in this "OD Opt-In Form."  She does not even identify the relevant "OD

Opt-In Form" itself, which is referenced just once in the complaint.  These vague, indefinite allegations of wrongdoing are insufficient.

These pleading deficiencies are further compounded by plaintiff's failure to link her allegations to a provision of the EFTA or Regulation E that allegedly was violated.  When "[i]t is not clear from the complaint what provision of Regulation E plaintiff is raising," a "vague reference" to it "does not provide the Court, or [a defendant], with sufficient information to determine how [defendant] is liable for the claims alleged."  *McClellon v. Cap. One, N.A.*, 2018 WL 3569859, at *2 & n.4 (W.D. Wash. July 25, 2018) (citing *Iqbal*, 556 U.S. at 678).[2]  Plaintiff's EFTA claim must therefore be dismissed for her failure to provide Pioneer sufficient notice of the facts underlying her claim.

### D.    Regulation E Does Not Provide a Private Right of Action on the Facts Alleged.

Although the Court need not decide this issue to dismiss the complaint in its entirety, plaintiff fails to state a claim under the EFTA for the additional reason that no private right of action exists for her alleged violations of Regulation E.  It is true that the EFTA imposes civil liability against "any person who fails to comply with any provision of this subchapter with respect to any consumer."  15 U.S.C. § 1693m(a).  But that alone is insufficient as to Regulation E, because "[l]anguage in a regulation . . . may not create a right that Congress has not."  *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001).  It is the statute, not the regulation, that provides a private right of action.  Thus, in *Sandoval*, the Supreme Court held that while Title VI of the Civil Rights Act provided a private right of action against instances of intentional discrimination, that right did not extend to agency regulations proscribing activities that had a disparate racial impact.

---

[2] *See also Oparaji v. Municipal Credit Union*, 2022 WL 1122681, at *2 (2d Cir. Apr. 15, 2022) (observing that plaintiff had failed to identify what provisions of the EFTA were violated by overdraft fees but dismissing on other grounds); *Prignoli v. Bruczynski*, 2021 WL 4443895, at *4 (E.D.N.Y. Sept. 28, 2021) (noting plaintiff's failure to identify a provision of the EFTA that allegedly was violated).

*Id.* at 281-82.  Because the text of Title VI did not "display an intent to create a freestanding private right of action to enforce regulations," the Court concluded that "no such right of action exists." *Id.* at 293.

Regulation E is a CFPB regulation that creates "[r]equirements for overdraft services," including the "[o]pt-in requirement" at issue here.  12 C.F.R. § 1005.17.  Regulation E provides that banks "shall not assess a fee or charge on a consumer's account for paying an ATM or one-time debit card transaction" unless the bank:

  (i)    Provides the consumer with a notice in writing, or if the consumer agrees, electronically, segregated from all other information, describing the institution's overdraft service;
  (ii)   Provides a reasonable opportunity for the consumer to affirmatively consent, or opt in, to the service for ATM and one-time debit card transactions;
  (iii)  Obtain the consumer's affirmative consent, or opt-in, to the institution's payment of ATM or one-time debit card transactions; and
  (iv)   Provides the consumer with confirmation of the consumer's consent in writing, or if the consumer agrees, electronically, which includes a statement informing the consumer of the right to revoke such consent.

12 C.F.R. § 1005.17(b)(1)(i)-(iv).  In addition to this four-element test, Regulation E also creates a variety of other requirements relating to overdraft fees.[3]

The breadth of these requirements goes beyond what the EFTA authorizes.  The EFTA does not even use the words "affirmative consent" or "opt in," strong textual evidence that Regulation E—which *creates* affirmative consent and opt-in requirements—impermissibly goes beyond the scope of the statute.  *See* 15 U.S.C. §§ 1693-1693r.  The EFTA refers to overdraft fees

---

[3] These include: (1) prohibiting banks from conditioning the payment of other overdrafts on a consumer's affirmative consent (§ 1005.17(b)(2)); (2) requiring banks to provide the same account terms to consumers who do not affirmatively consent to an overdraft service as banks provide to consumers who do affirmatively consent (§ 1005.17(b)(3)); (3) creating a compliance scheme depending on whether a consumer held an account before or after July 1, 2010 (§ 1005.17(c)); (4) mandating notice to consumers that is "substantially similar" to the CFPB's A-9 Model Consent Form for Overdraft Services, which "may not contain any information not specified in or otherwise permitted" by the regulation (§ 1005.17(d)); (5) providing rules for joint holders of an account (§ 1005.17(e)); (6) providing a continuing right to opt in or to revoke an opt in (§ 1005.17(f)); and (7) providing rules concerning the duration of a consumer's affirmative consent (§ 1005.17(g)).

only twice, with neither instance providing authority for the breadth of these requirements. *See* 15 U.S.C. §§ 1693(a)(7)(D) & 1693o-2(a)(7)(B).  And while the EFTA empowers the CFPB to "prescribe rules to carry out the purposes of this subchapter," *see* 15 U.S.C. § 1693b(a), a statutory provision that "merely authorizes" an agency to promulgate regulations does not create a private right of action to enforce those regulations.  *See Platsky v. Lazar*, 2015 WL 9694518, at *3 (S.D.N.Y. Nov. 30, 2015); *see also GFI Genfare v. Reg'l Transp. Auth.*, 932 F. Supp. 1049, 1051 (N.D. Ill. 1996) ("This type of general enabling statute typically does not reflect congressional intent to provide for private causes of action.").

To be sure, the EFTA does contain provisions relating to the disclosure of information. Yet these only underscore the incongruity between the EFTA and Regulation E.  Section 1693c requires a bank to provide disclosures "in readily understandable language," including for "any charges for electronic fund transfers or for the right to make such transfers." 15 U.S.C. § 1693c(a)(4).  Section 1693b(b) similarly instructs the CFPB to create forms "for optional use by financial institutions."  15 U.S.C. § 1693b(b).  But rather than requiring mere disclosure, Regulation E provides that the "notice required" by the opt-in requirement—which, again, is not in the EFTA—"shall be substantially similar to Model Form A-9," and further states that such notice "may not contain any information not specified in or otherwise permitted by this paragraph."  12 C.F.R. § 1005.17(d); 12 C.F.R. § Pt. 1005, App. A.  Put differently, the EFTA states that a bank may use "***optional***" forms, while Regulation E states that banks "***shall***" use forms "substantially similar to Model Form A-9," with the result that Regulation E "forbid[s] conduct that [the statute] permits."  *Sandoval*, 532 U.S. at 285-86; *see also Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 173 (1994) (holding that a "private plaintiff may not bring a [suit based on a regulation] against a defendant for acts not prohibited by the text

14

of [the statute]."); *Abrahams v. MTA Long Island Bus*, 644 F.3d 110, 118 (2d Cir. 2011) ("Plaintiffs must also show that the regulation applies—but does not expand—the statute.").

Tellingly, the complaint does not identify an underlying provision of the EFTA that would supply a private right of action for the violations of Regulation E that plaintiff alleges. She points instead to two district court decisions for that proposition. Compl. ¶ 191. Neither helps her. The first, *Hinton v. Atlantic Union Bank*, 2020 WL 9348205 (E.D. Va. Nov. 2, 2020), does not address whether Regulation E provides a private right of action and is thus inapposite, as courts do not address unraised issues. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). The other, *Lussoro v. Ocean Financial Credit Union*, 456 F. Supp. 3d 474 (E.D.N.Y. 2020), does not anchor its analysis on any text addressing overdrafts, opt-ins, or affirmative consent. Rather, *Lussoro* relied on the EFTA's "purposes," section 1693c's disclosure requirement, and the CFPB's issuance of "model clauses for optional use" as textual hooks for a private right of action to enforce Regulation E. *Id.* at 493-94.

But as explained above, the EFTA's text does not provide a private right of action for requirements that only exist in Regulation E. Compounding these errors, *Lussoro* also held that the EFTA's private right of action extends to Regulation E because the EFTA provides that a bank can be liable "as otherwise provided in regulations of the [CFPB]," *id.* at 494 (citing 15 U.S.C. § 1693h), and by holding that the EFTA's reference to an administrative enforcement mechanism did not "limit enforcement of the regulations to administrative actions." *Id.* at 494 (citing 15 U.S.C. § 1693o). *Sandoval* makes clear that this is not enough: the EFTA's private right of action does not give the CFPB *carte blanche* in fashioning new causes of action, and "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." 532 U.S. at 290.

In short, Regulation E imposes requirements not found in the EFTA. Thus, even assuming that Regulation E is a valid exercise of the CFPB's rulemaking authority, the text of the EFTA does not create a private right of action to enforce Regulation E. *See Sandoval*, 532 U.S. at 286 (assuming "for purposes of this decision that [a statute] confers the authority to promulgate disparate-impact regulations" but concluding that the statute's private right of action did not extend to violations of those regulations). Plaintiff accordingly fails to state a claim on this basis as well.

## II.     PLAINTIFF'S REMAINING STATE-LAW CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.

Because plaintiff lacks a federal cause of action, this Court should dismiss her remaining state-law claims for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Plaintiff attempts to invoke two bases for jurisdiction: (i) federal-question jurisdiction under 28 U.S.C. § 1331 based on her claim under the EFTA, with supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367; and (ii) diversity jurisdiction under CAFA, *see* 28 U.S.C. § 1332(d). *See* Compl. ¶¶ 10, 12. As explained above, plaintiff's sole federal claim suffers from several legal defects that require dismissal. *See supra* at 8-16. Without that claim, there is no basis to exercise federal-question jurisdiction under 28 U.S.C. § 1331. *See, e.g.*, *Speckman v. Fabrizio*, 547 F. Supp. 3d 239, 247 (N.D.N.Y. 2021) (Hurd, J.) ("Speckman's complaint now stands without a single federal claim to support jurisdiction in this court."). Plaintiff therefore must either establish an independent basis to exercise jurisdiction over her remaining state-law claims or persuade the Court to exercise supplemental jurisdiction over those claims. Plaintiff can do neither.

### A.     The Class Action Fairness Act Does Not Provide a Basis for Jurisdiction.

Plaintiff's attempt to invoke this Court's jurisdiction under CAFA is defeated by the allegations in the complaint. In general, CAFA provides for federal jurisdiction over putative class

actions where the amount in controversy exceeds $5 million and (1) "any member of a class of plaintiffs is a citizen of a State different from any defendant"; (2) "any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State"; or (3) "any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state." 28 U.S.C. § 1332(d)(2). On its face, the complaint fails to satisfy this "minimal diversity" requirement. *E.g.*, *Suero v. NFL*, 2022 WL 17985657, at *7 (S.D.N.Y. Dec. 16, 2022).

Plaintiff alleges that she is a resident and citizen of New York, and that Pioneer maintains its principal place of business in New York. Compl. ¶¶ 8-9. As between plaintiff and Pioneer, therefore, diversity of citizenship is lacking. *See* 28 U.S.C. § 1332(c)(1). The complaint also pleads that the members of the three putative classes are limited only to "citizens of New York." Compl. ¶¶ 119-120. As plaintiff has not identified even a single putative class member with citizenship diverse from Pioneer's, she has "failed to establish even minimal diversity[.]" *Suero*, 2022 WL 17985657, at *7. That failure precludes jurisdiction under CAFA.[4]

Even if plaintiff had pleaded minimal diversity, the complaint pleads on its face that the "home state" exception to CAFA jurisdiction applies. Under that exception, courts "*shall* decline to exercise jurisdiction" if two-thirds or more of the proposed class members and the primary defendant are citizens of the state where the action was originally filed. 28 U.S.C. § 1332(d)(4)(B) (emphasis added); *see Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141-42 (2d Cir. 2013). Here, the complaint pleads that 100% of putative class members are citizens of New York, Pioneer's home state. Compl. ¶¶ 9, 119. The home state exception accordingly applies. *See, e.g.*, *Int'l*

---

[4] There also is a serious question as to whether there exists "a reasonable probability" that the aggregate claims of the putative classes are in excess of $5 million. *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 58 (2d Cir. 2006). Plaintiff's allegations in that regard are wholly conclusory. Compl. ¶ 12. But the Court need not reach that issue in order to dismiss this case.

*House v. Consol. Edison Co. of New York, Inc.*, 2023 WL 2898623, at *4 (S.D.N.Y. Apr. 11, 2023) (applying exception where "Plaintiff was unable to identify a single putative class member that certainly is not a New York citizen").

In light of the foregoing, CAFA does not supply an independent basis to exercise jurisdiction over plaintiff's remaining state-law claims.

### B.     This Is Not a Proper Case for the Exercise of Supplemental Jurisdiction.

Without an independent basis for jurisdiction under CAFA, the only other potential way for this case to remain in federal court would be through the exercise of supplemental jurisdiction under 28 U.S.C. § 1367(c).  But given that this "case is in its infancy," there is no justifiable basis to exercise supplemental jurisdiction here.  *Speckman*, 547 F. Supp. 3d at 247; *N.Y. State Teamsters Council Health & Hosp. Fund v. Centrus Pharm. Sols.*, 235 F. Supp. 2d 123, 129 (N.D.N.Y. 2002) (Hurd, J.) ("Because the federal causes of action are dismissed at this early stage, supplemental jurisdiction over the state law cause of action will not be exercised."); *accord Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.").  If plaintiff wishes to continue to pursue her state-law claims, she must do so in state court.

### III.    IN THE ALTERNATIVE, PLAINTIFF'S STATE-LAW CAUSES OF ACTION SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Even if the Court were inclined to exercise supplemental jurisdiction over plaintiff's state-law claims, they should be dismissed for failure to state a claim upon which relief can be granted.

### A.     The Contract's Notice Provisions Bar Plaintiff's Breach of Contract Claims.

The Contract's error resolution provisions adopt substantively the same 60-day notice rule as the EFTA, and bar her contract claims for essentially the same reasons.  *See supra* at 9-11.

Among other things, the Contract requires plaintiff to report with reasonable promptness "any" errors relating to her bank statements; a failure to do so "precludes [her] from asserting a claim" against Pioneer. Ex. 1 at 3. The Contract specifies substantively the same procedure for electronic fund transfers, providing that plaintiff should contact Pioneer Bank as soon as possible if she believes her "statement or receipt is wrong or if [she] need[s] more information about an EFT listed on the statement or receipt." *Id.* at 11. And it provides that Pioneer Bank "must hear from you no later than sixty (60) days after we sent the FIRST statement on which the problem or error appeared." *Id.* at 11.

The Second Circuit recently addressed materially identical language in a unanimous summary order, holding that a plaintiff who failed to notify his bank of allegedly erroneous overdraft fees was barred from proceeding with his claims. *See Crockrom v. Bank of Am., N.A.*, 2021 WL 5751461, at *2 (2d Cir. Dec. 3, 2021). There, as here, the plaintiff entered into a contract that "told account holders that they must notify the Bank within 60 days 'if they think their statement . . . is wrong, or if they need more information about a transfer listed on the statement or receipt.'" *Id.* (cleaned up). As here, the plaintiff's contract advised him that "[w]e must hear from you NO LATER than 60 days after we sent you the FIRST statement on which the error or problem appeared." *Id.* And as here, the plaintiff argued semantics in an attempt to evade this barrier to suit. That attempt was unsuccessful: the Second Circuit specifically rejected the argument that his overdraft fees were not "transfers" but rather "fees," holding that his contract did not "make such fine distinctions" and that the contract "speaks broadly about errors or problems reflected in an account holder's statement." *Id.* At bottom, "[t]he contract placed the burden on [plaintiff] to notify the Bank that he thought his statement was 'wrong,' he failed to do so, and as a result was charged overdraft fees." *Id.* He therefore "forfeited his claim," *id.*, a

conclusion in line with New York appellate decisions interpreting similar provisions.[5]  The same result should follow here.

**B.      The Complaint Does Not State a Claim for Breach of Contract in Any Event.**

Plaintiff also fails to state a claim for her contract claims.  Under New York law, a plaintiff alleging breach of contract must show "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *DeFlora Lake Dev. Assocs., Inc. v. Park*, 654 F. App'x 9, 10 (2d Cir. 2016) (citation omitted).  When asserting such claims, "New York law and the *Twombly-Iqbal* standard of federal pleading require a complaint to identify, in non-conclusory fashion, the specific terms of the contract that a defendant has breached. Otherwise, the complaint must be dismissed." *Wallert v. Atlan*, 141 F. Supp. 3d 258, 286 (S.D.N.Y. Oct. 26, 2015); *Ally Fin. Inc. v. Comfort Auto Grp. NY LLC*, 2021 WL 4033249, at *5 (E.D.N.Y. Sept. 3, 2021) (dismissing breach of contract claim for "fail[ure] to identify any particular provision of the Agreements breached" (collecting cases)).

Plaintiff's first cause of action, for "authorize positive, settle negative" fees, exemplifies this defect.  Plaintiff asserts that "[n]o Contract provision authorizes Defendant" to charge the overdraft fees at issue, leaving it to Pioneer and the Court to somehow discern what provision she contends has been breached.  *See* Compl. ¶ 134.  This is insufficient.  Merely alleging the absence of a provision in an agreement does not establish a breach of the agreement, and courts have dismissed contract claims as insufficiently pleaded where a plaintiff asserted that a contract made "no mention" of an action allegedly causing breach.  *Comfort Auto*, 2021 WL 4033249, at *5.

---

[5] *See, e.g.*, *Radon Const. Corp. v. Colwell*, 248 A.D.2d 366, 366 (2d Dep't 1998) (affirming summary judgment where plaintiff failed to notify its bank of "any discrepancy in the bank statement" within the requisite period); *Qassemzadeh v. IBM Poughkeepsie Emps. Fed. Credit Union*, 167 A.D.2d 378 (2d Dep't 1990) (plaintiff waived right to recover on altered check cleared by his bank because he "fail[ed] to notify the defendant of the alleged altered draft within 30 days after his account statement was mailed to him, as required by the share draft agreement"); *see also Catalano v. Marine Midland Bank*, 303 A.D.2d 617, 618 (2d Dep't 2003) (same; collecting cases).

Moreover, "[m]erely attaching a contract [to the complaint] does not allege a breach of its terms—the complaint must identify the contractual obligation that was breached and allege how." *Wallert*, 141 F. Supp. 3d at 286.  Dismissal of this claim is appropriate on this basis alone.

Even if the Court could look past that fundamental pleading problem, other allegations in the complaint show that the claim is without merit.  The Contract explicitly provides for the scenario plaintiff now says she did not agree to.  Plaintiff agreed that Pioneer "may charge fees for overdrafts."  Ex. 1 at 1-2.  She knew that "[a] non-sufficient funds (negative) balance" may result from, among other things, items that were "treated as not yet 'available' or finally paid."  *Id.* at 7.  Plaintiff was "responsible for all charges incurred by the use of [her] card, code or other access device, including any overdrafts."  *Id.* at 9.  And she represented that she understood that her "statement balance may not reflect [her] available balance ***due to the settlement of pending transactions***."  *Id.* at 7 (emphasis added).  These disclosures foreclose any argument that Pioneer was not authorized to charge overdraft fees due to plaintiff's creation of a negative balance in her by making a withdrawal while another transaction was pending.  Materially identical language was addressed in *Chambers v. NASA Federal Credit Union*, where the court found that use of the phrase "available balance" in "critical provisions dealing specifically with overdrafts and debit transactions" foreclosed a breach of contract claim because those provisions "unambiguously convey[ed]" that the bank "will impose overdraft fees on debit transactions that overdraw the available balance."  222 F. Supp. 3d 1, 12-13 (D.D.C. 2016).  That is exactly the case here.

Plaintiff's second breach of contract claim—premised on the theory that the Contract does not permit charging an overdraft fee more than once for an "item"—likewise falls short.  Compl. ¶¶ 142-52.  Again, she points to "no Contract provision" that allegedly was breached.  *Id.* ¶ 145.  And where she does provide any texture to her claims, she points only to an unidentified $40.16

"item" that allegedly was first declined and returned on August 23, 2022 (she does not say why) and then reprocessed on August 30, 2022. *Id.* ¶¶ 94-100. Drawing on a provision from the Retail Service Charge Schedule providing that charges may be incurred for an item presented against insufficient funds, plaintiff asserts that the Contract "promises that an NSF Fee will be charged on each item" and that these charges breach that alleged promise. *Id.* ¶¶ 80-82; Ex. 1 at 14.

That is not what the Contract says. Instead, it discloses numerous other potential fees, such as for those utilizing Pioneer Bank's overdraft service, items presented against uncollected funds, and items presented but subsequently returned. Ex. 1 at 14. The Contract further provides that "[i]f you do not have sufficient funds in your account, there may be a charge for each transaction **whether or not the transfer is processed**." *Id.* at 9 (emphasis added). The Contract thus provides that overdraft fees may be incurred for not just insufficient funds, but also for items presented but subsequently returned, and then explicitly states that charges may be incurred regardless of whether a transfer is processed. Though vaguely pleaded, plaintiff's overdraft fees—resting as they do on (1) a returned item and (2) a reprocessed item—fall squarely within the range of overdraft fees authorized by the Contract.

Plaintiff's third breach of contract claim also fails to plead facts sufficient to state a claim. Compl. ¶¶ 153-63. Plaintiff does not provide any facts stating what happened when she incurred an overdraft fee while her balance was allegedly $7.86. *Id.* ¶ 108. She does not state what the transaction was, how it was submitted, how the fee was incurred, or whether other settling transactions caused the fee on the same day. Nor does she identify the relevant provisions of the Contract that she contends have been breached, again pointing to "[n]o Contract provision." *Id.* ¶ 156. Dismissal of this claim on these grounds is therefore appropriate.

**C.      Plaintiff's Unjust Enrichment Claim Is Barred Because a Valid Contract Governs the Subject Matter.**

The Court should dismiss plaintiff's unjust enrichment claim.  Compl. ¶¶ 164-72.  Such equitable relief is only available in the absence of a contract governing the relationship between two parties.  Plaintiff has only presented this claim "in the alternative" in the event the Contract is deemed unenforceable, but the parties agree her Contract is valid.  This bars her claim.  *See, e.g.*, *In re Navidea Biopharm. Litig.*, 2019 WL 7187111, at *10 (S.D.N.Y. Dec. 26, 2019) (dismissing unjust enrichment claim "because neither [party] has alleged that the . . . Agreement is invalid or unenforceable" (collecting cases)).

**D.      The Complaint Does Not State a Claim Under Section 349 of the New York General Business Law.**

Plaintiff also fails to state a claim under N.Y. G.B.L. § 349, for at least three reasons.

*First*, plaintiff fails to identify any conduct actionable under section 349.  "To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009).  "Deceptive acts" under the statute "are defined objectively as acts likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Id.* (cleaned up).

Plaintiff's allegations of deceptive conduct are mere boilerplate divorced from any specific factual conduct.  *See* Compl. ¶¶ 173-189.  Swaths of the complaint are borrowed word-for-word from other pleadings filed in suits across the country, which have also (for example) recited the allegation that there is a "secret step" that "allows Defendant to charge OD Fees on transactions that never should have gotten them—transactions that were authorized into sufficient funds, and

for which Defendant specifically set aside money to pay."[6]  Compl. ¶ 56.  Plaintiff fails to provide

any facts relating to this "secret step," and the Second Circuit has condemned such "transparent

cut-and-paste and fill-in-the-blank pleadings" as "Mad-Libs-style complaints" that "confirm[] the

implausibility of their claims of injury."  *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 77

(2d Cir. 2022).  Those few paragraphs of the complaint specific to plaintiff's claims, such as her

allegation that she incurred fees, do not provide any plausible basis to infer that Pioneer engaged

in deceptive conduct.  Put simply, plaintiff has "failed to identify any specific deceptive statement"

that Pioneer "made, or the additional disclosures that [Pioneer] should have made."  *Rider v.

Uphold HQ Inc.*, 657 F. Supp. 3d 491, 499 (S.D.N.Y. 2023).

> *Second*, and as explained above, *see supra* at 20-22, the complaint alleges "essentially that

the Defendant failed to satisfy its contractual duties, not that it concealed or misrepresented any

contractual terms."  *Costoso v. Bank of Am., N.A.*, 74 F. Supp. 3d 558, 575 (E.D.N.Y. 2015); *see

also Lucker v. Bayside Cemetery*, 114 A.D.3d 162, 175 (1st Dep't 2013) (same).  Mere allegations

that a "defendant[] failed to satisfy [its] contractual duties" do not state a section 349 claim.

*Lucker*, 114 A.D.3d at 175.

> *Third*, the allegations underlying plaintiff's section 349 claim—the overdraft fees on which

she bases her breach of contract claims—were disclosed to her, including by informing plaintiff

that the statement balance is not necessarily the available balance.  *See supra* at 2-5.  Practices that

are "fully disclosed" to the consumer cannot violate section 349.  *See Sands v. Ticketmaster-N.Y.,

Inc.*, 207 A.D.2d 687, 687 (1st Dep't 1994); *see also Ludl Elecs. Prods., Ltd. v. Wells Fargo Fin.

Leasing, Inc.*, 6 A.D.3d 397, 398 (2d Dep't 2004) (holding same); *Lewis v. Hertz Corp.*,

---

[6] *See, e.g.*, Complaint ¶¶ 46-47, *Brasiel v. Sidney Fed. Credit Union*, 3:22-cv-1276 (N.D.N.Y. Dec. 1, 2022); Complaint ¶¶ 51-52, *Ward v. CNB Bank*, 1:22-cv-1576 (N.D. Ohio Sept. 7, 2022); Complaint ¶¶ 50-51, *Griggs v. Am. Nat'l Bank & Trust Co.*, 7:22-cv-450 (W.D. Va. August 4, 2022); Complaint ¶¶ 47-48, *Lewis v. Pendleton Comm. Bank, Inc.*, 2:22-cv-12 (N.D. W. Va. Aug. 5, 2022).  This just begins the long list of all of them.

181 A.D.2d 493, 494 (1st Dep't 1992) (same).  As the Contract makes clear, plaintiff chose to bank with Pioneer knowing of the overdraft policy and her ability to request that Pioneer not cover overdraft transactions.  She was not deceived.

### E.    Plaintiff Lacks Article III Standing to Seek Injunctive Relief for Her Contract and Section 349 Claims.

Finally, plaintiff lacks standing to pursue her requests for injunctive relief.  *See* Compl. ¶ 189 & p. 35.  This is analyzed on a claim-by-claim and remedy-by-remedy basis.  *See Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) ("[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.").  Plaintiff does not plead that she remains a bank customer or that there is any reason why she may incur overdraft fees again.  This forecloses her requests for injunctive relief.  *See Berni v. Barilla S.p.A.*, 964 F.3d 141, 149 (2d Cir. 2020) ("Where there is no likelihood of future harm, there is no standing to seek an injunction."); *see also Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 68 (S.D.N.Y. 2013) (finding that plaintiff lacked Article III standing because "he was not an XM customer at the time this action was commenced" and "[a] plaintiff in actions for injunctive relief may not rely on past injuries to satisfy the injury-in-fact requirement").

<u>**CONCLUSION**</u>

Based on the foregoing, the complaint should be dismissed in its entirety.  Plaintiff's sole federal cause of action under the EFTA is defective on multiple grounds and should be dismissed.  Without any federal claim, there is no basis for this Court to exercise subject matter jurisdiction over plaintiff's remaining state-law claims.  But even if the Court were to reach the merits of plaintiff's state-law claims, they should be dismissed for failure to state a claim upon which relief can be granted.  This Court should also dismiss plaintiff's requests for injunctive relief for lack of Article III standing.

Dated: March 4, 2024          DLA PIPER LLP (US)
      New York, New York

*/s/ Robert J. Alessi*

Robert J. Alessi (NDNY Bar Roll No. 101019)
Steven M. Rosato (NDNY Bar Roll No. 703375)
1251 Avenue of the Americas
New York, NY 10020
Tel.: (212) 335-4500
robert.alessi@us.dlapiper.com
steven.rosato@us.dlapiper.com

Courtney Saleski (NDNY Bar Roll No. 703877)
Aaron J. Shaddy (*Admission pending*)
1650 Market Street - Suite 5000
Philadelphia, PA 19103
Tel.: (215) 656-3300
courtney.saleski@us.dlapiper.com
aaron.shaddy@us.dlapiper.com

*Counsel for Defendant Pioneer Bank*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all parties in this action/known counsel of record via the CM/ECF system on this 4th day of March, 2024.

*/s/ Robert J. Alessi*
Robert J. Alessi (NDNY Bar Roll No. 101019)
